[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Shimko,* Slip Opinion No. 2019-Ohio-2881.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-2881

DISCIPLINARY COUNSEL *v.* SHIMKO.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Shimko,* Slip Opinion No. 2019-Ohio-2881.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct for charging a clearly excessive fee, improperly revealing and using information relating to the representation of a former client, and engaging in conduct that adversely reflects on the lawyer's fitness to practice law— Indefinite suspension.*

(No. 2018-1438—Submitted January 29, 2019—Decided July 18, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-047.

_____

**Per Curiam.**

{¶ 1} Respondent, Timothy Andrew Shimko, of Westlake, Ohio, Attorney Registration No. 0006736, was admitted to the practice of law in Ohio in 1976.

**{¶ 2}** In June 2009, Shimko was censured by the Supreme Court of Arizona for representing clients with potential conflicts of interest and entering into a business relationship with those clients without obtaining their informed consent and for charging clearly excessive fees by billing a law clerk's work at lawyer rates. Six months later, we imposed reciprocal discipline for that misconduct in the form of a public reprimand. *Disciplinary Counsel v. Shimko*, 124 Ohio St.3d 1201, 2009-Ohio-6879, 918 N.E.2d 1007. In December 2012, we imposed a fully stayed one-year suspension on Shimko for falsely accusing a trial judge of dishonesty and claiming that the judge harbored improper motives for his rulings. *Disciplinary Counsel v. Shimko*, 134 Ohio St.3d 544, 2012-Ohio-5694, 983 N.E.2d 1300.

**{¶ 3}** In a complaint certified to the Board of Professional Conduct on October 5, 2017, relator, disciplinary counsel, alleged that Shimko violated four professional-conduct rules by charging a clearly excessive fee, threatening to disclose confidential information to compel payment of that fee, and then disclosing that information to the potential detriment of his former client.

**{¶ 4}** After conducting a hearing, a three-member panel of the board issued a report finding that Shimko had engaged in the charged misconduct and recommending that he be suspended from the practice of law for two years with the second year stayed on the condition that he engage in no further misconduct. The board accepted the panel's findings of fact and misconduct. Finding that Shimko had threatened to disclose and actually disclosed confidential client information in an effort to collect an excessive legal fee, failed to acknowledge the wrongful nature of his misconduct, and failed to show any remorse in this—his third disciplinary case in just nine years—the board recommends that we suspend Shimko for two years with no stay.

**{¶ 5}** Shimko has raised seven objections to the board's findings and recommendation. He contends that the panel inaccurately described and failed to disclose to the board critical evidence and relevant law that undermines the panel's

2

findings of fact and misconduct and supports his position that his disclosure of client information was permitted by the Rules of Professional Conduct and our precedent. Shimko also argues that he should be permitted to charge a client for the preparation of his retainer agreement when the client subsequently used his services to commit fraud. In addition, Shimko argues that his misconduct does not warrant a two-year suspension and that the panel erroneously denied his motion for leave to file a motion for summary judgment.

**{¶ 6}** Based upon our independent review of the record, we find that Shimko's objections are without merit. Because the board's findings of fact and misconduct are supported by clear and convincing evidence, we accept them. We find, however, that an indefinite suspension is the appropriate sanction in this case.

### Background

**{¶ 7}** In July 2015, fire destroyed a house that Richard Berris had been building for approximately 17 years. Berris, an engineer by trade, did not reside in the house, but he stored instruments, data, and books in its basement. At the time of the fire, Berris had two insurance policies. The first was a Nationwide commercial-property policy that covered his residence but provided only limited coverage for off-premises equipment. At his examination under oath ("EUO"), Berris acknowledged that he had filed a $500,000 claim under that policy for "business related items" destroyed in the fire but that Nationwide had offered him only $10,000 on that claim. The second policy was an Allstate homeowner's policy that covered the fire-damaged premises but excluded coverage for business property. Berris filed a fire-related insurance claim with Allstate, which then arranged to examine Berris under oath in October 2015.

### The Board's Findings of Fact

**{¶ 8}** On October 8, 2015, Berris telephoned Shimko seeking his representation at the EUO. During that phone call, there was no discussion of Shimko representing Berris beyond the EUO.

**{¶ 9}** Shimko sent Berris a letter stating that he would be happy to prepare him for, and represent him at, the EUO. Shimko stated that he would like to meet with Berris on October 20 and that his standard rate was $385 an hour. In response, Berris sent Shimko an e-mail in which he asked Shimko to conduct an intake interview at no charge, requested a written copy of Shimko's fee and services contract, and asked whether Shimko would be handling the matter personally or assigning it to another attorney in his firm.

**{¶ 10}** On October 18, Berris sent Shimko another e-mail stating that he had rescheduled the EUO for mid-November, because he had not heard from Shimko. The following day, Shimko responded by e-mail, stating:

> It is my recollection that we spoke at some length on the 8th of October, *for which I have not and will not charge you.* * * * I was expecting to receive and review your insurance policies before I prepared you. For that work, I quoted you an hourly rate of $385.00/hr.
>
> Up to this point in time, you have requested only that I prepare you for and accompany you to your EUO. For those services, I charge $385.00/hr. I anticipate that it will take me @ 1 1/2 hrs. to review your policies. From what you told me, there are at least two policies to read and analyze. I anticipate that it will take 1 1/2 hrs. to prepare you for the EUO. My experience tells me that your examination will last 2-3 hours. Unless your deposition runs longer, and if those are all the services you ask me to perform, I would anticipate sending you a bill for somewhere in the range of $2,300.

(Emphasis added.)

4

{¶ 11} In that e-mail, Shimko acknowledged that Berris had not spoken to him about expanding the scope of his representation but also gave him a detailed explanation of the terms under which he would agree to handle the entire insurance claim.

{¶ 12} Shimko appeared and represented Berris at his EUO on November 12, 2015. The next day, he sent Berris an e-mail with a $4,350 bill for the services he had provided. At the conclusion of his message, he stated, "If you require any further services in the future, it would be my privilege to represent you."

{¶ 13} Displeased by the amount of the bill, which was nearly double the original estimate, Berris wrote a letter to Shimko on December 11, 2015, stating that he was satisfied with Shimko's legal services, but not his billing practices. He explained that there were "[u]nexpected problems" with the bill, including a charge of $154 for the initial telephone conference, despite Shimko's representation that there would be no charge for that call, a $539 charge for Shimko's October 19 e-mail to Berris, and a previously undisclosed interest rate of 1.5 percent per month for fees not paid within 30 days. Berris stated that he would pay $3,300 in $500 monthly installments "without penalty or interest." He enclosed the first check for $500 and continued to send a check each month until the entire $3,300 had been sent. Shimko rejected Berris's proposed terms and threatened to place a lien on Berris's property and to foreclose on the lien if necessary.

{¶ 14} In January 2016, Shimko filed suit against Berris in the Cuyahoga County Court of Common Pleas to collect the remainder of his fees. On July 14, 2016, Berris's counsel wrote to Shimko and asked him to dismiss his complaint with prejudice. In a July 18 letter to Berris's counsel, Shimko responded by threatening to disclose confidential information that Berris had purportedly conveyed to him during the underlying legal representation. In that letter, Shimko claimed that while preparing for the EUO, Berris had told him that he had "been conducting a substantial amount of business, doing significant development work

and testing at the premises before" the fire. Shimko alleged that after he advised Berris that his insurance claims would be denied if he had used the premises for business purposes, Berris made false statements at his EUO to the effect that he had not worked or otherwise conducted business on the premises before they were damaged by the fire.

{¶ 15} Shimko further asserted to Berris's counsel that those facts were relevant to explain why he spent more time on Berris's case than originally estimated and that the facts were therefore not protected by the attorney-client privilege. He concluded his letter by stating:

> I suspect that my motion for summary judgment, a *public record*, which will not be long in coming, may have an impact beyond this litigation. Perhaps, Mr. Carr, it may have implications in your financial future, as well. I am giving your client his last break, and he would be wise to take it. After I file the motion for summary judgment, I cannot unwring [sic] that bell. If he wants to resolve this case, now would be a very propitious time for your client to do so.

(Emphasis added.)

{¶ 16} In one of the briefs Shimko filed in his lawsuit against Berris, he claimed that the preparation for Berris's EUO took longer than he had estimated because Berris had the wrong insurance on his respective premises—a commercial policy where he lived and a homeowners policy where he worked. He then revealed that "though [Berris] conducted a significant amount of business out of the premises, he claimed he did not run a business out of the damaged premises" at his EUO.

{¶ 17} The court presiding over the fee-dispute litigation found that Shimko spent a reasonable amount of time on Berris's representation. Nonetheless, the court found that it was unreasonable for Shimko to charge Berris $154 for his initial telephone conference and $539 for preparing the e-mail regarding Berris's fee agreement. Moreover, the court did not award Shimko any of the 1.5 percent interest rate he had demanded from Berris.

### The Board's Findings of Misconduct

*Charging a Clearly Excessive Fee*

{¶ 18} The panel found that Shimko violated Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting a clearly excessive fee) in three ways.

{¶ 19} First, Shimko charged Berris a $154 fee for the initial telephone conference after representing that there would be no charge for the call. The panel found that the charge was not inadvertent because when Berris challenged the charge, Shimko threatened to sue him, place a lien on his property, and foreclose on the property—and then Shimko filed suit. The panel noted that during the trial of the fee dispute, Shimko testified that he reneged on the agreement to waive that fee, stating: "I changed my mind. * * * I decided to bill him after he treated me so badly in the examination under oath. I changed my mind." And at his disciplinary hearing, Shimko testified, "My word is my bond until I change it, I guess." When questioned by a panel member, he eventually admitted, "I shouldn't have done that."

{¶ 20} Second, the panel took issue with Shimko's $539 charge for his October 19 e-mail. Because that e-mail only memorialized his fee agreement with Berris and conveyed an offer to represent Berris in future litigation, the panel determined that the charge was unreasonable and clearly excessive. Finally, the panel also found that Shimko's 1.5 percent monthly-interest charge on any unpaid

balance of Berris's fee after 30 days was unreasonable and clearly excessive because that term was not set forth in their fee agreement.

*Threatening to Disclose and Disclosing Confidential Client Information*

**{¶ 21}** The panel also found that in his efforts to collect his fees, Shimko violated multiple professional-conduct rules by threatening to disclose and then intentionally revealing confidential information when he stated that Berris's testimony at the EUO was inconsistent with his confidential statements to Shimko—all the while knowing that that disclosure could damage Berris's pending insurance claim with Allstate.

**{¶ 22}** The panel determined that by threatening to disclose Berris's confidential information and then actually disclosing it in a public filing without making any effort to limit who could access that information, Shimko violated Prof.Cond.R. 1.9(c)(1) (prohibiting a lawyer from using information relating to the representation of a former client to the disadvantage of the former client unless the information has become generally known or disclosure is permitted by rule), 1.9(c)(2) (prohibiting a lawyer from revealing information relating to the representation of a former client except as permitted or required by rule), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

**{¶ 23}** The board adopted the panel's findings of fact and misconduct.

**Shimko's Objections to the Findings of the Panel and Board**

**{¶ 24}** Shimko has raised seven objections to the panel's findings of fact and conclusions of law—adopted in their entirety by the board—and the board's recommended sanction. However, none of these claims have merit and we overrule all seven of his objections.

*The Panel's Report Is Not Fatally Flawed*

**{¶ 25}** In Shimko's first objection, he asserts that the panel's report is fatally flawed because it failed to disclose critical evidence and caselaw to the board.

Shimko alleges that these defects prevented the board from accurately assessing his conduct, determining whether he disclosed confidential information, and evaluating whether he reasonably believed that that information was necessary to his claim or defense in the fee-dispute litigation.

{¶ 26} But nothing in the rules requires the panel to summarize all of the evidence presented at a hearing. Rather, Gov.Bar R. V(12)(I) instructs the panel to submit "a report of its findings of fact, conclusions of law, and recommended sanction" to the director of the board. Here, the panel's omission of certain evidence from its report is reasonable in light of the panel's finding that Berris's testimony was more credible than that of Shimko.

{¶ 27} Although Shimko suggests that the board's review of a disciplinary case is limited to the four corners of the panel's report, no rule prohibits the board from considering the full record of the proceedings before the board or its panel. In fact, Gov.Bar R. V(12)(K) specifies that the board's report to this court "shall include the record of proceedings before the Board, a transcript of testimony taken, if any, and an itemized statement of the actual and necessary expenses incurred in connection with the proceedings." Thus, the rules contemplate that the board will have complete access to the full record, including proceedings before the panel. And because the board's deliberations are confidential, Shimko can only speculate as to what the board did or did not review. *See* Gov.Bar R. V(8)(B). Ultimately, because we conduct our own review of the record, consider Shimko's timely objections, and serve as the final arbiter of misconduct and sanctions in this case, *see Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 330, 708 N.E.2d 193 (1999), Shimko has not suffered any harm as the result of the alleged omissions of the panel.

{¶ 28} Shimko's claim that the panel's report was somehow deficient because it failed to address *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, is likewise

without merit.  In *Squire*, we held that "Ohio recognizes the common-law self-protection exception to the attorney-client privilege, which permits an attorney to testify concerning attorney-client communications where necessary to establish a claim for legal fees on behalf of the attorney or to defend against a charge of malpractice or other wrongdoing in litigation between the attorney and the client." *Id.* at paragraph one of the syllabus.  We further acknowledged that our holding comported with Prof.Cond.R. 1.6(b), which provides:

> A lawyer may reveal information relating to the representation of a client, including information protected by the attorney-client privilege under applicable law, to the extent the lawyer reasonably believes necessary for any of the following purposes:
>
> * * *
>
> (5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client * * *.

*Id.* at ¶ 49-51.

{¶ 29} Although the panel in this case did not specifically cite *Squire*, it nonetheless considered whether the information in question was confidential until Shimko disclosed it.  Having determined that it was, the panel then considered whether Shimko's disclosure of that information was authorized by Prof.Cond.R. 1.6(b)(5)—in other words, whether Shimko's belief that the disclosure was necessary to establish his claim for fees was reasonable.

{¶ 30} On these facts, we overrule Shimko's first objection to the panel's report.

*Shimko Disclosed Berris's Confidential Information*

**{¶ 31}** As his second objection, Shimko contends that the information he disclosed was not confidential at the time he disclosed it for several reasons. For the reasons that follow, we reject his arguments.

**{¶ 32}** First, Shimko argues that the information was not confidential, because it had been published in three newspaper articles in July 2015 and was therefore generally known. *See* Prof.Cond.R. 1.9(c)(1) (permitting a lawyer to use information relating to the representation to the disadvantage of the former client when the information has become generally known). The articles cited by Shimko do report Berris's statements to reporters shortly after the fire destroyed his property, but the panel found that those articles did not establish that Berris's alleged false statements were common knowledge. We find that the articles generally indicated that Berris stored testing and measurement equipment on the damaged property. Just one article identified Berris as a "research and development professional," and none of them stated that he used the equipment stored on the fire-damaged premises for business purposes. On the contrary, one article quoted Berris as stating, "I had lots of equipment stored there to design and build test instrumentation equipment because I didn't have room at my old house. I have been collecting and restoring test instrumentation equipment for 40 years. It is all gone." This information is generally consistent with Berris's testimony at his EUO. Therefore, we agree with the panel that these newspaper articles do not support Shimko's claim that Berris's purported use of the fire-damaged premises for business purposes was "generally known."

**{¶ 33}** Alternatively, Shimko argues that neither Berris nor counsel he retained to defend him in the fee-dispute litigation treated the disclosed information as confidential because they published Berris's misconduct in the grievance they filed with relator on July 26, 2016, and introduced that information in "open court" while defending against Shimko's lawsuit in Cuyahoga County. Further, Shimko

asserts that Berris waived any privilege attached to the communications when he testified at his EUO, and that the information was never confidential or privileged because it was communicated with an intent to use the attorney-client relationship to commit a fraud.

{¶ 34} The panel rejected Shimko's claim that Berris disclosed the confidential information by filing a grievance with relator while the fee-dispute litigation remained pending because pursuant to Gov.Bar R. V(8), all grievances remain confidential until a certified complaint is filed with the board. Moreover, we note that Berris's confidential grievance was filed in direct response to Shimko's July 18, 2016 letter disclosing Berris's confidential information to Berris's counsel in the fee-dispute litigation and his July 25, 2016 motion for summary judgment.

{¶ 35} The panel likewise gave no credence to Shimko's claim that Berris had disclosed the relevant information in his EUO testimony. Instead, the panel found that the confidential information consisted of the facts that Berris had purportedly conveyed to Shimko while *preparing* for the EUO and Shimko's allegation that those facts contradicted Berris's EUO testimony.

{¶ 36} Shimko now contends that his disclosure was authorized by R.C. 2317.02(A) because Berris waived the attorney-client privilege when he "voluntarily testified, albeit untruthfully, regarding the subject for which he sought Shimko's legal advice; to-wit, the use of the subject premises as covered under the insurance contract." In support, Shimko cites several cases interpreting earlier versions of R.C. 2317.02 and its predecessor, G.C. 11494, which generally provided that if a client voluntarily *testified* in a case, the attorney could be *compelled* to testify "on the same subject." *See State v. McDermott*, 72 Ohio St.3d 570, 572-573, 651 N.E.2d 985 (1995); *Swetland v. Miles*, 101 Ohio St. 501, 130 N.E. 22 (1920); *Spitzer v. Stillings*, 109 Ohio St. 297, 142 N.E. 365 (1924). Shimko's reliance on those cases is misplaced because he was not *compelled* to

testify as contemplated by R.C. 2317.02(A). On the contrary, he voluntarily disclosed confidential information obtained in the scope of representing Berris without Berris's informed consent. Consequently, his conduct is governed by Prof.Cond.R. 1.6, which sets forth the rule of client-lawyer confidentiality that "applies in situations other than those where evidence is sought from the lawyer through compulsion of law." Prof.Cond.R. 1.6, Comment 3.

{¶ 37} Prof.Cond.R. 1.6(a) prohibits a lawyer from "reveal[ing] information relating to the representation of a client, including information protected by the attorney-client privilege under applicable law, unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted * * * or required by * * * this rule." The protection afforded by the rule is broader than the attorney-client privilege and "applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source." Prof.Cond.R. 1.6, Comment 3. Thus, even if Shimko could have been compelled to testify on these matters, he had an ongoing duty to maintain their confidentiality in other contexts.

{¶ 38} Shimko's final argument in support of his claim that the information he disclosed was not confidential or privileged relies on the principle that the attorney-client privilege "does not attach in a situation where the advice sought by the client and conveyed by the attorney relates to some future unlawful or fraudulent transaction." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 661, 635 N.E.2d 331 (1994). But that argument rests squarely on Shimko's claim that Berris lied under oath at the EUO—a claim that the panel and board flatly rejected.

{¶ 39} The panel noted that Shimko expressed considerable outrage that Berris had put him in a "terrible position" by allegedly lying at his EUO and allegedly using his advice to commit insurance fraud. At the panel hearing, Shimko testified that Berris told him that he "carried on a significant amount of his

business" at the fire-damaged premises and that he believed that Berris had all of his business-related equipment there. Shimko claimed that Berris's EUO testimony to the effect that he did not work out of the fire-damaged premises was "wholly inconsistent with what he told me the Friday before" the EUO. Shimko claimed that he confronted Berris about his "perjury" as they left the EUO and agreed that they parted on "bad terms." Yet just one day after Berris allegedly lied at the EUO, Shimko sent him a letter stating that it would be "[his] privilege to represent" Berris if he "require[d] any further services in the future"—a statement the panel found to be "totally inconsistent" with Shimko's expression of "extreme displeasure" with his client. Shimko's letter was more consistent with Berris's testimony at the disciplinary hearing, in which Berris stated that he and Shimko did not discuss his EUO testimony as they left the EUO; instead, he thanked Shimko and Shimko indicated that he would be sending a bill. And although the panel did not summarize Berris's testimony at the disciplinary hearing, Berris testified that he told the truth during his EUO. Further, his testimony was consistent with Shimko's acknowledgment—in his motion for summary judgment in his lawsuit against Berris—that they dedicated a significant portion of their EUO preparation to discussing "how Mr. Berris might successfully navigate his way through the [EUO], without destroying coverage and without perjuring himself."

{¶ 40} After weighing the conflicting testimony, the panel found Berris "to be the more believable party in this matter" and expressly rejected Shimko's claims that Berris lied under oath. Ultimately, the panel was convinced—as are we—that the sole purpose of Shimko's threats and subsequent exposure of confidential information was not to prevent Berris from using his legal services to commit insurance fraud, *see* Prof.Cond.R. 1.6(b)(3), but to compel Berris to pay his fee. On these facts, we overrule Shimko's second objection to the panel's report and find that Shimko threatened to disclose and actually disclosed confidential information related to his representation of Berris.

14

*Even if Shimko's Belief that Disclosure of Confidential Information Was
Necessary to Establish His Claim for Fees and Defend Against Berris's
Allegations Was Reasonable, Shimko Failed to Limit the Extent of His Disclosure*

**{¶ 41}** In his third objection, Shimko claims that he reasonably believed that he could disclose Berris's confidential information to establish the legitimacy of his fees and to refute Berris's allegations that his billing practices were unreasonable, unethical, and "laughable." He further contends that relator failed to present any evidence that his actions and beliefs were not reasonable.

**{¶ 42}** The panel rejected Shimko's professed belief that all of his disclosures of confidential information were necessary to establish Shimko's fee claim in his lawsuit against Berris. On the contrary, the panel noted that Berris's alleged lies did not require Shimko to perform any additional work and that none of the time billed related to the allegedly false statements. We agree, and we also find that the timing of Shimko's disclosure likewise refutes his claim that the disclosure was necessary to defend against allegations that he engaged in unethical conduct. In fact, the only allegations that had been levied against Shimko at the time he first disclosed Berris's confidential information were that he had improperly charged Berris for preparing his engagement letter and for a telephone conference that he had previously represented would be provided free of charge, that an additional $357 of his remaining fee was unreasonable, and that his complaint and motion for default judgment were "frivolous." On these facts, we conclude that Shimko could not *reasonably* believe that all of his disclosures of confidential information were necessary—as contemplated in Prof.Cond.R. 1.6(b)(5)—to establish his fee claim, to defend himself against a criminal charge or civil claim, or to respond to allegations in a proceeding concerning his representation of Berris.

**{¶ 43}** Even if we were to find that Shimko reasonably believed that his disclosure of confidential information was necessary to collect his fees, the

comments to Prof.Cond.R. 1.6 explain that when practicable, if a lawyer believes that disclosure of confidential client information is necessary, "the lawyer should first seek to persuade the client to take suitable action to obviate the need for disclosure," and that a "disclosure adverse to the client's interest should be no greater than * * * necessary to accomplish the purpose." Prof.Cond.R. 1.6, Comment 16. The comment further provides, "If the disclosure will be made in connection with a judicial proceeding, the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable." *Id.*

{¶ 44} Here, Shimko's efforts to "persuade" Berris "to take suitable action" consisted largely of threats to sue him and publicly disclose his confidential information. In Shimko's direct correspondence with Berris, he never mentioned the alleged contradiction between Berris's statements in preparation for the EUO and his testimony at the EUO. And although Shimko attempted to explain his decision to charge Berris for his initial telephone consultation in a December 2015 e-mail to Berris, by stating, "I informed you that I do not give free consultations for commercial matters," that explanation contradicted statements he had made in correspondence only two months earlier. Shimko also failed to address the substance of Berris's other challenges to the billing statement.

{¶ 45} Indeed, the first time that Shimko mentioned any perceived problem with Berris's testimony, he disclosed that confidential information to Berris's new counsel in a July 18, 2016 e-mail—without first obtaining Berris's informed consent. Approximately one month later, Shimko publicly disclosed the substance of Berris's confidential communications when he filed his motion for summary judgment and accompanying declaration, and again in his opposition to Berris's motion for summary judgment, without making any effort to limit access to the information to the tribunal or other persons having a need to know it. Thus, even

16

if Shimko reasonably believed that it was necessary to disclose Berris's confidential information to establish his claim for his legal fees or to defend against allegations that he had acted unethically, the scope of his disclosure in a public filing was greater than Shimko could reasonably have believed was necessary to accomplish that purpose. *See Cleveland Metro. Bar Assn. v. Heben*, 150 Ohio St.3d 335, 2017-Ohio-6965, 81 N.E.3d 469, ¶ 11 (finding that an attorney violated Prof.Cond.R. 1.6(a) by disclosing attorney-client communications and other client information in a publicly filed affidavit without attempting to limit public access to that document). We therefore overrule Shimko's third objection.

{¶ 46} In Shimko's fifth objection, he contends that charging him with a violation of Prof.Cond.R. 8.4(h) for sending his July 18, 2016 e-mail disclosing Berris's confidential information to Berris's new counsel violates Shimko's purported "right" to disclose the information and his obligation to "warn" his client of the impending disclosure under Prof.Cond.R. 1.6, Comment 16. Having found that Shimko did not reasonably believe that his disclosures of Berris's confidential information were necessary to his own claims or defenses, that he failed to bring the issues to Berris directly, and that he did not take any action to limit access to that information, we also find that this objection is without merit.

{¶ 47} Having overruled Shimko's first, second, third, and fifth objections to the panel and board's findings of fact and misconduct, we adopt the board's findings that Shimko's conduct described above violated Prof.Cond.R. 1.5(a), 1.9(c)(1), 1.9(c)(2), and 8.4(h).

*Shimko's Fourth and Seventh Objections Overruled*

{¶ 48} In his fourth objection, Shimko argues that he should be permitted to charge Berris for the preparation of his retainer agreement because Berris used his legal advice to commit fraud. Because Shimko offers no support for this proposition and we have already found that no fraud occurred, we overrule this objection.

{¶ 49} We also overrule Shimko's seventh objection, in which he argues that the panel erroneously denied his motion for leave to file a motion for summary judgment. The panel did not deny Shimko's motion for leave to file—it granted it. The record demonstrates that the panel considered both Shimko's motion for summary judgment and attached supporting affidavits, but it found that he failed to carry his burden of proving that there was no genuine issue of material fact and that he was entitled to judgment as a matter of law. Because the facts of this case were highly contested and resolution of the issues manifestly turned on the panel's assessment of the credibility of the witnesses, we overrule Shimko's seventh objection.

**Sanction**

{¶ 50} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 51} Here, the panel found that four aggravating factors are present. Shimko has twice been disciplined by this court, acted with a selfish motive for personal financial gain, and committed multiple offenses. *See* Gov.Bar R. V(13)(B)(1), (2), and (4). In addition, he has refused to acknowledge the wrongfulness of his conduct, as demonstrated by his testimony claiming that he acted appropriately and would not do anything differently if he encountered a similar situation in the future. *See* Gov.Bar R. V(13)(B)(7). The panel also found that no mitigating factors are present. *See* Gov.Bar R. V(13)(C).

{¶ 52} Shimko argued that no sanction should be imposed for his conduct, but relator argued in favor of a two-year suspension with no stay, arguing that "Respondent obliterated the sacred fiduciary duty of confidentiality between a lawyer and client, all in an effort to collect a clearly excessive fee. Driven by pure greed, and a hardwired, vindictive personality, respondent sought to blackmail

Berris by threatening to sabotage Berris' claim against Allstate unless Berris paid his full fee."

**{¶ 53}** In considering the appropriate sanction for Shimko's misconduct, the panel examined the sanctions we imposed for similar misconduct in *Disciplinary Counsel v. Cicero*, 134 Ohio St.3d 311, 2012-Ohio-5457, 982 N.E.2d 650, *Akron Bar Assn. v. Holder*, 102 Ohio St.3d 307, 2004-Ohio-2835, 810 N.E.2d 426, and *Heben*, 150 Ohio St.3d 335, 2017-Ohio-6965, 81 N.E.3d 469.

**{¶ 54}** In *Cicero*, we imposed a one-year suspension on an attorney who disclosed confidential information he had obtained from a prospective client to the head coach of the Ohio State University football team. Cicero had a single prior disciplinary offense, acted with a selfish motive, gave testimony at his disciplinary hearing that was, at times, disingenuous and not credible, refused to acknowledge the wrongful nature of his misconduct, and subjected his prospective client to criticism and harassment for causing harm to the Ohio State football program. In contrast, here the panel noted that Shimko had *two* prior disciplinary offenses.

**{¶ 55}** In *Holder*, we imposed a two-year suspension, but stayed the final 18 months on the condition of no further misconduct, based on findings that an attorney who divulged client secrets—including his client's criminal record and other background information—to a government agency and potential business associates of the client in an effort to impede the client's business interests. Holder also filed suit against the affected client in an attempt to intimidate him, engaged in dishonest conduct, improperly represented clients with conflicting interests, and failed to cooperate in the ensuing disciplinary investigation. Holder had no prior disciplinary record, expressed remorse for his actions, and presented evidence that he suffered from a serious medical condition at the time of his misconduct. Unlike Holder, Shimko has shown no remorse for his misconduct nor offered any mitigating evidence.

**{¶ 56}** And in *Heben*, we imposed a stayed one-year suspension based on findings that Heben had disclosed confidential information—including communications that he had with his client about the scope of his representation and his legal advice to her—in an affidavit filed with his motion to withdraw from the client's case. Heben's disclosure, like Shimko's, was neither required nor permitted by the Rules of Professional Conduct. Like Shimko, Heben refused to acknowledge the wrongful nature of his misconduct, and he acted with a selfish, vengeful purpose that arose from his displeasure at not having been paid. But Heben had no record of prior discipline in 37 years of practice; made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings; submitted numerous letters from judges, attorneys, and laypersons attesting to his good character, reputation, and community service; and was found to have committed just one ethical violation.

**{¶ 57}** The panel found that Shimko's misconduct was more egregious than that of Cicero, Holder, and Heben. It also found that from the time Berris first challenged Shimko's fee, Shimko's conduct was confrontational, arrogant, and unprofessional, as he made "not-so-veiled threats" to disclose his client's confidential information in a manner that would harm the client's insurance claim and subsequent litigation. The panel noted that Shimko exhibited a confrontational and evasive attitude throughout the disciplinary proceedings and that not only did he fail to recognize that his behavior was inappropriate but his attorney suggested that his conduct was a model for other attorneys to follow. Citing the absence of any mitigating factors and the presence of multiple aggravating factors, including Shimko's record of prior discipline, the panel recommended that Shimko be suspended from the practice of law for two years with the second year stayed on the condition that he engage in no further misconduct.

**{¶ 58}** Recognizing that this is Shimko's third instance of professional discipline in the past nine years and that Shimko used threats to collect a legal fee

20

in excess of what he had agreed to charge his client, failed to acknowledge his wrongdoing, and has shown no remorse for his conduct, the board recommends that he be suspended from the practice of law for two years with no stay.

{¶ 59} In his sixth objection, Shimko argues that a two-year suspension is not warranted for a single instance of charging a clearly excessive fee—particularly as "there is no evidence in the record to indicate that [his] conduct would ever occur again." However, we have overruled each of Shimko's objections to the panel and board's findings of fact and misconduct. We have also determined that Shimko not only charged a clearly excessive fee but also threatened to disclose his client's confidential information to compel payment of that fee and then actually disclosed that information to the potential detriment of his former client. Moreover, we have determined that Shimko made those disclosures without his client's consent and that he had no reasonable belief that the disclosures were necessary to establish his claims or defenses in the underlying fee-dispute litigation. Given the unreasonable and vindictive nature of Shimko's conduct in this, his third disciplinary matter, we overrule his sixth objection and find that an indefinite suspension—with the attendant requirement that Shimko petition this court for reinstatement and establish by clear and convincing evidence that he possesses the requisite mental, educational, and moral qualifications and is a proper person to be readmitted to the practice of law in Ohio—is necessary and appropriate to protect the public and to deter Shimko from engaging in further unethical behavior.

{¶ 60} Accordingly, Timothy Andrew Shimko is indefinitely suspended from the practice of law in Ohio. Costs are taxed to Shimko.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, and STEWART, JJ., concur.

FRENCH and WISE, JJ., dissent and would suspend respondent from the practice of law for two years.

EARLE E. WISE, J., of the Fifth Appellate District, sitting for DONNELLY, J.

_____

Scott J. Drexel, Disciplinary Counsel, Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, and Michelle R. Bowman, Assistant Disciplinary Counsel, for relator.

Alkire & Nieding, L.L.C., Richard C. Alkire, and Dean C. Nieding, for respondent.

_____